## A09A0834. KOHLER v. THE STATE.
(686 SE2d 328)

BERNES, Judge.

A Paulding County jury convicted Saul Kohler of trafficking in cocaine in violation of OCGA § 16-13-31 (a) (1).[1] Kohler filed a motion

---

[1] The jury also found Kohler guilty of conspiracy to traffic in cocaine. See OCGA §§ 16-4-8; 16-13-33. The trial court merged this charge into the trafficking cocaine charge for purposes of sentencing.

for new trial, which the trial court denied. On appeal, Kohler contends that the trial court erred (1) in denying his motion in limine to exclude evidence of marijuana recovered along with the cocaine at the time of his arrest; (2) in admitting evidence of statements made by co-conspirators during commission of the crime when audiotape recordings of the statements had not been produced to him during discovery; (3) in denying his motion for mistrial after a state's witness impermissibly interjected his character into evidence; and (4) in making improper comments while ruling on the motion for mistrial. For the reasons that follow, we discern no error and affirm.

Viewed in the light most favorable to the verdict,[2] the evidence at trial showed that on August 2, 2004, a confidential informant contacted the U. S. Drug Enforcement Administration ("DEA") to report that he had been solicited to transport 100 kilos of cocaine from Texas to Georgia. The DEA launched an undercover investigation and coordinated the transport of the cocaine between the informant and conspirators in the transaction. Conspirators delivered the cocaine, which was packaged in six boxes, to a Texas warehouse, where they unloaded the boxes onto the informant's tractor-trailer. After the conspirators departed, the undercover DEA agents opened the boxes and saw that they contained a white powdery substance.

The agents instructed the informant to drive to another location, where the boxes were removed from the trailer, placed into the custody of the agents, and taken to a DEA district office for storage and testing. The agents learned that the boxes contained approximately 100 kilos of cocaine with a purity of 87 percent. The wholesale street value of the cocaine was approximately $2 million.

The cocaine was then flown to Atlanta aboard a DEA aircraft. The DEA agents retained possession of virtually all the cocaine, but a fake substance, referred to as "sham cocaine," was substituted into the boxes. A sample of the cocaine was mixed into the sham cocaine for use during the continuing undercover operation.

A DEA agent subsequently met with the informant in Atlanta and loaded the boxes containing the sham cocaine back onto the truck. While under the agents' video and audio surveillance, the informant made contact with the conspirators and received instructions from them regarding the drug delivery. Pursuant to these instructions, the informant traveled to a gas station where he met one of the conspirators. The conspirator took the informant to a nearby warehouse, and showed him the location where the delivery was to be made. The conspirator then took the informant back to the

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

gas station and instructed him to wait for a telephone call before making the delivery. The informant received the call 30 minutes later, after which he delivered the boxes of sham cocaine to the warehouse.

In the meantime, DEA agents continued to conduct a ground surveillance of the warehouse. The agents saw Kohler take the boxes from the warehouse and load them onto the rear of a pickup truck. After the boxes were loaded, Kohler and another conspirator left the warehouse.

Kohler drove the boxes to a residence in Paulding County while the DEA agents maintained air surveillance and videotaped his travel and activities. After Kohler unloaded the boxes and took them into the residence, the agents approached the residence and obtained a written consent to search from the homeowner.

The agents discovered the boxes of cocaine in the basement of the house. The boxes of cocaine had been stacked against a wall next to 20 bales of marijuana weighing approximately 200 pounds. Several of the boxes containing the sham cocaine had been opened. The agents also recovered a rifle, a crossbow, $62,000 in U. S. currency, a handgun, and ammunition.

Kohler was arrested at the residence. He was subsequently advised of his *Miranda*[3] rights and consented to an interview with the agents. Kohler claimed that he was visiting a friend in Atlanta and agreed to move some boxes with him. Kohler admitted picking the boxes up, taking them to the residence and unloading them in the basement. He claimed, however, that he thought the boxes contained clothing and asserted that he did not know that illegal drugs were in the boxes until after they were opened. Although he initially denied having touched the cocaine, he later admitted that he had handled one of the packages. Kohler also testified at trial, denying that he had knowingly participated in the drug trafficking conspiracy.

Following the trial, the jury found Kohler guilty of trafficking in cocaine. His motion for new trial was denied, and this appeal ensued.

1. Kohler contends that the trial court erred in denying his motion in limine to exclude evidence of the marijuana that was seized during the search of the residence. He argues that evidence of the marijuana was prejudicial and irrelevant to the cocaine trafficking offenses for which he was on trial. We disagree.

Although Kohler was not charged with trafficking of marijuana, the marijuana evidence was nonetheless admissible in this case.

---

[3] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

> It is well settled that [as a general rule] all of the circumstances connected with an accused's arrest, including any items taken from his person, are admissible as evidence at trial, even those that establish the commission of another criminal offense. . . .[4] Where the search reveals both the drug for which the defendant is on trial and another not included in the indictment, [evidence of the other drug] is nevertheless admissible as a part of the res gestae.

(Citations and punctuation omitted.) *Jimerson v. State*, 163 Ga. App. 54 (1) (293 SE2d 513) (1982). See also *Sherrill v. State*, 158 Ga. App. 564, 566 (4) (281 SE2d 313) (1981) ("An exception to the other crimes rule is where possession of other contraband, although not included in the indictment, is a part of the res gestae of the search."). The evidence in this case reflects that after transporting the boxes of cocaine to the residence, Kohler stacked them in the basement directly next to approximately 200 pounds of marijuana. The smell of the marijuana permeated through the basement area of the house where the drugs were located such that the existence of the drugs in that area was readily noticeable. That his co-conspirators openly disclosed the vast quantity of marijuana to Kohler made it less likely that they would have lied to Kohler about the contents of the boxes. As such, the presence of the marijuana was relevant to the issue of Kohler's knowledge. Thus, the marijuana and the cocaine, seized during the agents' search of the residence and incident to Kohler's arrest, was properly admitted as part of the res gestae of the crime. See *Jimerson*, 163 Ga. App. at 54-55 (1).

2. Kohler further contends that the trial court erred in admitting the statements made by his co-conspirators during the commission of the crime because the state failed to produce audiotape recordings of the statements. Again, we discern no error.

Kohler elected to proceed under the reciprocal discovery provisions of OCGA § 17-16-1 et seq. by serving written notice on the state, as required by OCGA § 17-16-2 (a). The state furnished Kohler with the DEA agents' written investigation report detailing the substance of wiretap communications that had transpired between the confidential informant and the co-conspirators. The communications concerned the locations and times of the cocaine delivery. The audiotapes of these recorded communications were retained by the DEA for use in related federal court proceedings and were never

---

[4] The "evidence still must be shown to be relevant." *Nichols v. State*, 282 Ga. 401, 403 (2) (651 SE2d 15) (2007).

actually possessed by the state.[5] As such, the audiotapes were not introduced at trial. Instead, the state relied upon the testimony of the DEA agents who described the substance of the communications heard during the surveillance as set forth in the investigation report.[6] While Kohler was aware of the existence of the tapes prior to trial, he sought to have the testimony regarding the communications excluded because the audiotapes had not been provided during discovery. The trial court denied Kohler's motion.

To render evidence inadmissible for the state's failure to comply with reciprocal discovery requirements, the defendant is required to show both prejudice and bad faith. See OCGA § 17-16-6; *Felder v. State*, 270 Ga. 641, 644-645 (6) (514 SE2d 416) (1999); *Murray v. State*, 293 Ga. App. 516, 519 (2) (667 SE2d 382) (2008). Kohler has not alleged nor shown bad faith and for this reason alone, his claim fails. Furthermore, Kohler did not request a continuance when he learned of the alleged discovery violation. "Generally a defendant has a duty to request a continuance to cure any prejudice which may have resulted from the [s]tate's failure to comply with the requirements of OCGA § 17-16-1 et seq." (Punctuation omitted.) *Gabriel v. State*, 280 Ga. 237, 239 (3) (626 SE2d 491) (2006).

3. Kohler further argues that the trial court erred in denying his motion for a mistrial after a state's witness impermissibly interjected his character into evidence by referring to his prior arrest record.

During direct examination, DEA special agent Shontar Linder testified that Kohler was not federally charged with any drug offenses because Kohler had initially misinformed them by asserting that he was 17 years old. Federal policy prohibited criminal charges against a person that young. On cross-examination, trial counsel questioned special agent Linder further in the following exchange:

> DEFENSE COUNSEL: And so when you file a report on August 9, 2004, that indicated my client's birthday is in 1984, you knew that his age was nineteen, didn't you?
>
> SPECIAL AGENT LINDER: That's basically what I was — what he told, that he related to us.
>
> DEFENSE COUNSEL: Okay. So when you testified earlier you thought [Kohler] was seventeen, you had information that that was not true, correct?

---

[5] "Possession, custody or control of the state or prosecution" for purposes of the discovery statute is defined as "an item which is within the possession, custody, or control of the prosecuting attorney or any law enforcement agency involved in the investigation of the case being prosecuted." OCGA § 17-16-1 (1).

[6] The testimony favored Kohler's defense to the extent that it established that Kohler had not been mentioned or implicated in any of the communications.

SPECIAL AGENT LINDER: I didn't know what his real . . . date of birth was at the time [I] was speaking with him. He told us one thing and then later on I ran a criminal history. It showed that he had been arrested, and he had another date of birth.

Trial counsel objected to special agent Linder's testimony as being unresponsive, moved for curative instructions, and moved for a mistrial on the ground that it impermissibly placed Kohler's character in issue. The trial court gave the jury a curative instruction informing them that the testimony regarding Kohler's prior arrest history was improper, could not be considered in determining his guilt or innocence in this case, and was required to be disregarded. The trial court further polled the jury to determine whether they could abide by the curative instructions and render a verdict based upon the competent evidence duly admitted. All of the jurors indicated that they could follow the curative instructions. Kohler renewed his motion for mistrial and the motion was again denied.

> Whether to grant a mistrial based on improper character evidence is within the discretion of the trial judge. In reviewing the trial court's decision, an appellate court may consider the nature of the statement, the other evidence in the case, and the court's and counsel's action in dealing with the impropriety. We have previously held that curative instructions are an adequate remedy when witnesses improperly placed the defendant's character into evidence by testifying about his prior convictions or criminal acts. In this case, the [special agent's] reference to [the prior arrest] appears to be inadvertent and the trial judge promptly instructed the jury to disregard the [special agent's] statement. Under these circumstances, we conclude that the trial court did not abuse its discretion in deciding to give curative instructions to the jury rather than grant a mistrial.

(Citation and punctuation omitted.) *Browning v. State*, 236 Ga. App. 893, 894 (2) (513 SE2d 779) (1999). See also *Dunn v. State*, 251 Ga. 731, 734 (4) (309 SE2d 370) (1983) ("Reference to an arrest, made in the presence of the jury without other detail, is harmless error where proper instructions are given to disregard the reference to the past arrest and it is not error to overrule a motion for mistrial based thereon.") (citations and punctuation omitted).

4. Lastly, Kohler contends that the trial court violated OCGA § 17-8-57 by commenting upon the intent and credibility of the state's

witness in its curative instructions to the jury. His claim is without merit.

While instructing the jury to disregard the improper testimony regarding Kohler's prior arrest, the trial court stated that "[i]t's unfortunate that that information came out, however, I don't believe that the witness here was doing that deliberately but was bringing it out in answer to the questions that were put to her and an explanation." Kohler did not interpose an objection to the trial court's remarks nor did he move for a mistrial on this ground. Consequently, a new trial would be warranted "only if the trial court's comments seriously affected the fairness, integrity, and public reputation of these judicial proceedings." (Citation and punctuation omitted.) *Bolden v. State*, 281 Ga. App. 258, 259 (2) (636 SE2d 29) (2006). See also *Paul v. State*, 272 Ga. 845, 849 (3) (537 SE2d 58) (2000).

> OCGA § 17-8-57 forbids a trial judge from expressing or intimating his opinion as to what has or has not been proved or as to the guilt of the accused. The remarks of a judge assigning a reason for a ruling, however, do not constitute an expression of opinion or a comment on the evidence within the meaning of that statute.

(Citation and punctuation omitted.) *Bolden*, 281 Ga. App. at 260 (2). The trial court's remarks in this case did not express an opinion as to the credibility of the state's witness as Kohler alleges. Rather, the remarks were responsive to Kohler's objection to the witness's testimony and only served to explain the rationale for the court's decision to deny the motion for mistrial. The provisions of OCGA § 17-8-57 were not violated. See id.

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED NOVEMBER 2, 2009.

*Roger L. Curry*, for appellant.
*Fred A. Lane, Jr., District Attorney, Anthony Volkodav, Jr., Assistant District Attorney*, for appellee.